J-S03026-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALEXANDER AQUINO-OQUENDO | : | |
| | : | |
| Appellant | : | No. 974 MDA 2023 |

Appeal from the Judgment of Sentence Entered June 12, 2023
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0000302-2022

BEFORE: OLSON, J., NICHOLS, J., and BECK, J.

MEMORANDUM BY NICHOLS, J.: **FILED MAY 07, 2024**

Appellant Alexander Aquino-Oquendo appeals from the judgment of sentence imposed following his conviction for persons not to possess firearms and related offenses. Appellant's counsel (Counsel) has filed a petition to withdraw and an **Anders**/**Santiago**[1] brief. After review, we grant Counsel's petition to withdraw and affirm the judgment of sentence.

The trial court summarized the factual history of this case as follows:

At trial, Officer Vincent Garapoli of the Cumru Township Police Department testified that after midnight on December 17, 2021, he was driving on Lancaster Avenue behind a Nissan Murano that he intended to stop for traffic violations when the driver, who was subsequently identified as [] Appellant, stopped the vehicle, got out, threw his hands in the air, and started yelling. Officer Garapoli testified that [] Appellant was the only person in the

---

[1] **Anders v. California**, 386 U.S. 738 (1967); **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).

vehicle. Officer Garapoli described [] Appellant as angry and hostile.

Officer Garapoli testified that [] Appellant ignored his orders to return to the vehicle. [] Appellant closed the driver's side door, locked the car, and walked toward Officer Garapoli while alleging that he was being racially profiled. Officer Garapoli informed [] Appellant that he was under arrest and placed [] Appellant in handcuffs following a brief struggle.

Officer Garapoli then walked to the vehicle and used his flashlight to look in through the driver's side window. He observed a black semi-automatic handgun on the driver's side floorboard. Further investigation revealed that the vehicle was registered to Miguel Angel Reyes Lopez. The handgun was subsequently sent to the Pennsylvania State Police Laboratory for forensic analysis. DNA swabs were obtained from [] Appellant and the registered owner of the firearm, Andrew Morales-Garcia.[2]

Timothy Gavel, a forensic DNA scientist employed by the Pennsylvania State Police Laboratory, testified that his analysis revealed that DNA from at least four individuals was present on the firearm. Mr. Gavel explained that [] Appellant's DNA profile could be included as a potential contributor to the DNA sample obtained from the gun and that Andrew Morales-Garcia's DNA profile could be excluded as a contributor. Mr. Gavel testified that it was seventy-three septillion times more likely that the DNA sample obtained from the gun originated from [] Appellant and three unknown individuals as opposed to four unknown individuals. A septillion is a number with twenty-four zeros. Mr. Gavel further testified that out of the four individuals who contributed DNA to the sample obtained from the gun, [] Appellant's contribution was the largest.

[Appellant] called Andrew Morales-Garcia to testify. Mr. Morales-Garcia testified that [] Appellant is his cousin and that on December 16, 2021, he borrowed [] Appellant's car because he was having car problems. Mr. Morales-Garcia stated that he picked up [] Appellant's Nissan Murano, used it for approximately an hour, and then returned it. Mr. Morales-Garcia testified that

_____

[2] Although the transcript of the trial spelled Mr. Morales-Garcia's last name as "Moralas Garcia," it appears that the correct spelling is "Morales-Garcia." **See** Ex. C-7. Therefore, we will use that spelling throughout this memorandum.

he owned the Mossberg semi-automatic pistol at issue in this case and that he placed it under the seat in the Nissan Murano when he borrowed the car.

Mr. Morales-Garcia stated that he did not realize that he had left his gun in [] Appellant's car until he heard about [] Appellant's arrest the following day. Mr. Morales-Garcia testified that he contacted the Cumru Township Police Department and provided a statement about leaving his gun in [] Appellant's vehicle. Mr. Morales-Garcia testified that he also attended [] Appellant's first court appearance. Sergeant Thomas Pinkasavage of the Cumru Township Police Department verified that Mr. Morales-Garcia called and spoke to him about the gun and testified that, following the conversation, he confirmed that Mr. Morales-Garcia had a permit to carry a concealed firearm.

Trial Ct. Op., 8/10/23, at 3-5 (citations and footnotes omitted).

We add that at trial, the parties stipulated that Appellant had a prior conviction which made it illegal for him to possess a firearm under 18 Pa.C.S. § 6105(b). N.T., 1/11/23, at 128. On January 11, 2023, a jury convicted Appellant of persons not to possess firearms, and the trial court convicted Appellant of six summary violations of the Vehicle Code.[3]

On June 12, 2023, the trial court sentenced Appellant to four and one-half to ten years' imprisonment for persons not to possess firearms and imposed a total of $650.00 in fines for the six summary offenses. Appellant filed a timely post-sentence motion challenging the weight of the evidence. The trial court denied that motion.

---

[3] 18 Pa.C.S. § 6105(a)(1), 75 Pa.C.S. §§ 1543(a), 4703(a), 1301(a), 4302(a)(1), 4107(b)(2), and 1786(f), respectively.

Appellant filed a timely notice of appeal. Appellant and the trial court both complied with Pa.R.A.P. 1925.

Counsel has identified two issues in the ***Anders***/***Santiago*** brief,[4] which we summarize as follows:

1. Was the evidence sufficient to sustain Appellant's conviction for persons not to possess firearms?

2. Was Appellant's conviction for persons not to possess firearms against the weight of the evidence?

***Anders***/***Santiago*** Brief at 5-7.

"When faced with a purported ***Anders***[/***Santiago***] brief, this Court may not review the merits of any possible underlying issues without first examining counsel's request to withdraw." ***Commonwealth v. Wimbush***, 951 A.2d 379, 382 (Pa. Super. 2008) (citation omitted). Counsel must comply with the technical requirements for petitioning to withdraw by (1) filing a petition for leave to withdraw stating that after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; (2) providing a copy of the brief to the appellant; and (3) advising the appellant that he has the right to retain private counsel, proceed *pro se*, or raise additional arguments that the appellant considers worthy of the court's

_____

[4] We note that Counsel's ***Anders***/***Santiago*** brief does not contain a statement of questions presented as required by the Rules of Appellate Procedure. ***See*** Pa.R.A.P. 2111(a)(4), 2116. Instead Counsel states "[i]t is the opinion of Counsel that the appeal is frivolous." ***Anders***/***Santiago*** Brief at 5. We derive these issues from the argument section of Counsel's ***Anders***/***Santiago*** brief.

attention. *See Commonwealth v. Goodwin*, 928 A.2d 287, 290 (Pa. Super. 2007) (*en banc*). In an *Anders*/*Santiago* brief, counsel must set forth the issues that the defendant wishes to raise and any other claims necessary to effectuate appellate presentation of those issues. *Commonwealth v. Millisock*, 873 A.2d 748, 751 (Pa. Super. 2005).

Additionally, counsel must file a brief that meets the requirements established in *Santiago*, namely:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.

"Once counsel has satisfied the above requirements, it is then this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." *Goodwin*, 928 A.2d at 291 (citation omitted). This includes "an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." *Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa. Super. 2015) (citation and footnote omitted); *accord Commonwealth v. Yorgey*, 188 A.3d 1190, 1197 (Pa. Super. 2018) (*en banc*). Moreover, we note that when an issue is waived, it is deemed a frivolous issue. *See Commonwealth v. Kalichak*, 943 A.2d 285, 291 (Pa.

Super. 2008) (holding that when an issue has been waived, "pursuing th[e] matter on direct appeal is frivolous").

Here, Counsel has complied with the procedural requirements for seeking withdrawal by filing a petition to withdraw, sending Appellant a letter notifying Appellant of his intent to withdraw, explaining his appellate rights, informing Appellant of his right to proceed *pro se* or with private counsel, and supplying Appellant with a copy of the ***Anders***/***Santiago*** brief. ***See Goodwin***, 928 A.2d at 290. Counsel also provided this Court with a copy of his letter to Appellant informing him of his rights. Moreover, Counsel's ***Anders***/***Santiago*** brief complies with the requirements of ***Santiago***. Counsel includes a summary of the relevant factual and procedural history, refers to the portions of the record that could arguably support Appellant's claim, and sets forth the conclusion that the appeal is frivolous. ***See Santiago***, 978 A.2d at 361. Accordingly, we conclude that Counsel has met the technical requirements of ***Anders*** and ***Santiago***, and we will proceed to address the issues presented in Counsel's ***Anders***/***Santiago*** brief.

## Sufficiency of the Evidence

The first issue identified by Counsel is that the evidence was insufficient to sustain Appellant's conviction because the Commonwealth did not prove that Appellant possessed the handgun. ***Anders***/***Santiago*** Brief at 5-7. Counsel notes that to the extent that Appellant's claim relies on testimony of Mr. Morales-Garcia, the handgun's owner, that claim goes to the weight of the evidence and not the sufficiency. ***Id.*** at 6-7.

In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

***Commonwealth v. Palmer***, 192 A.3d 85, 89 (Pa. Super. 2018) (citation omitted and formatting altered).

"To sustain a conviction for the crime of persons not to possess a firearm, the Commonwealth must prove that [the defendant] possessed a firearm and that he was convicted of an enumerated offense that prohibits him from possessing, using, controlling, or transferring a firearm." ***See Commonwealth v. Miklos***, 159 A.3d 962, 967 (Pa. Super. 2017) (citation omitted and formatting altered); ***see also*** 18 Pa.C.S. § 6105(a)(1), (b).

Possession can be established "by proving actual possession, constructive possession, or joint constructive possession." ***Commonwealth v. Parrish***, 191 A.3d 31, 36 (Pa. Super. 2018) (citation omitted). "Constructive possession is an inference arising from a set of facts that

possession of the contraband was more likely than not." ***Commonwealth v. McClellan***, 178 A.3d 874, 878 (Pa. Super. 2018) (citation omitted).

This Court has explained:

Where a defendant is not in actual possession of the prohibited items, the Commonwealth must establish that the defendant had constructive possession to support the conviction. Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. We have defined constructive possession as conscious dominion, meaning that the defendant has the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

It is well established that, as with any other element of a crime, constructive possession may be proven by circumstantial evidence. In other words, the Commonwealth must establish facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue.

[A] defendant's mere presence at a place where contraband is found or secreted is insufficient, standing alone, to prove that he exercised dominion and control over those items. Thus, the location and proximity of an actor to the contraband alone is not conclusive of guilt. Rather, knowledge of the existence and location of the contraband is a necessary prerequisite to proving the defendant's intent to control, and, thus, his constructive possession.

***Parrish***, 191 A.3d at 36-37 (citations omitted and formatting altered).

Here, the trial court addressed Appellant's claim as follows:

[The evidence presented at trial], taken together, were sufficient for the jury as fact[-]finder to find [] Appellant guilty of persons not to possess, use, manufacture, control, sell, or transfer firearms. The fact that [] Appellant was the largest contributor to the DNA sample retrieved from the firearm and the fact that Andrew Morales-Garcia's DNA profile could be excluded from the DNA sample was no doubt helpful to the jury in reaching its

decision. [] Appellant's claim that the evidence produced at trial failed to establish beyond a reasonable doubt that he possessed the firearm is without merit.

Trial Ct. Op. at 5-6 (citations omitted and some formatting altered).

Following our review of the record, the parties' arguments, and the trial court's opinion, we affirm on the basis of the trial court's analysis of this issue. *See* Trial Ct. Op. at 3-6. Specifically, we agree with the trial court that, when viewed in the light most favorable to the Commonwealth, there was sufficient evidence to establish Appellant possessed the firearm. ***See id.***; ***Palmer***, 192 A.3d at 89; ***Miklos***, 159 A.3d at 967. Therefore, Appellant is not entitled to relief on this claim.

**Weight of the Evidence**

The next issue identified by Counsel is that Appellant's convictions were against the weight of the evidence. ***Anders***/***Santiago*** Brief at 6-7. Specifically, Appellant presented the testimony of Mr. Morales-Garcia, who explained that he owned the handgun and he had inadvertently left the handgun in Appellant's car. ***Id.*** at 3, 6-7.

In reviewing a weight claim, this Court has explained:

The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. A new trial is not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of witnesses. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

On appeal, our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence. An appellate court may not reverse a verdict unless it is so contrary to the evidence as to shock one's sense of justice.

***Commonwealth v. Gonzalez***, 109 A.3d 711, 723 (Pa. Super. 2015) (citations and quotation marks omitted).

As this Court has repeatedly stated:

The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none, or some of the evidence and to determine the credibility of the witnesses. Resolving contradictory testimony and questions of credibility are matters for the finder of fact. It is well-settled that we cannot substitute our judgment for that of the trier of fact.

\* \* \*

Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

Furthermore, in order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.

***Commonwealth v. Spence***, 290 A.3d 301, 311 (Pa. Super. 2023) (citations omitted and formatting altered).

Here, the trial court addressed Appellant's weight-of-the-evidence claim as follows:

Here, given the facts set forth above, the jury's verdict of guilty on the charge of persons not to possess, use, manufacture, control, sell, or transfer firearms was well reasoned and does not shock one's sense of justice. Furthermore, this court's denial of [Appellant's] post-sentence motion was not manifestly unreasonable, was not the result of misapplication of the law, and was not the result of partiality, prejudice, bias, or ill will. Therefore, [Appellant's] second allegation of error is also without merit.

Trial Ct. Op. at 7.

Based on our review of the record, we discern no abuse of discretion by the trial court in denying Appellant's weight claim. **See Gonzalez**, 109 A.3d at 723. We note that credibility determinations and the resolution of conflicting evidence are exclusively within the province of the fact-finder, and that this Court cannot substitute its judgment for that of the fact-finder. **See Spence**, 290 A.3d at 311. The record amply supports the trial court's conclusion that Appellant possessed the handgun. **See** Trial Ct. Op. at 7. Therefore, Appellant is not entitled to relief on his weight-of-the-evidence claim.

For these reasons, we agree with Counsel's assessment that the claims presented in the **Anders**/**Santiago** brief are frivolous.

## Appellant's *Pro Se* Responses

Appellant has filed several *pro se* responses to Counsel's **Anders**/**Santiago** brief. First Appellant argues that Counsel provided

ineffective assistance by filing an **Anders**/**Santiago** brief instead of developing the claims Appellant raised in his Rule 1925(b) statement in an advocate's brief. Appellant's *Pro Se* Resp., 12/18/23; Appellant's *Pro Se* Mot. to Dismiss **Anders** Brief, 2/5/24, at 1 (unpaginated); Appellant's *Pro Se* Resp., 3/7/24. Appellant also claims that Counsel did not comply with the procedural requirements of **Anders** because Counsel failed to notify Appellant of his right to respond the petition to withdraw or Appellant's right to proceed *pro se*. Appellant's *Pro Se* Mot. to Dismiss **Anders** Brief, 2/5/24, at 1-2 (unpaginated); Appellant's *Pro Se* Resp., 3/7/24.

Generally, a criminal defendant may not assert claims of ineffective assistance of counsel on direct appeal. **See Commonwealth v. Holmes**, 79 A.3d 562, 577-80 (Pa. 2013). Instead, such claims are to be deferred to PCRA review. **Id.** None of the exceptions that our Supreme Court recognized in **Holmes** are applicable here because Appellant did not raise them before the trial court in his post-sentence motion. **See id.** at 563-64; **see also Commonwealth v. Delgros**, 183 A.3d 352, 361 (Pa. 2018) (holding that trial courts can address "claims challenging trial counsel's performance where the defendant is statutorily precluded from obtaining subsequent PCRA review[]" and the defendant raised his ineffectiveness claim(s) in a post-sentence motion). Therefore, we conclude that Appellant's ineffectiveness claim cannot be considered on direct appeal, and we dismiss these claims without prejudice to Appellant's right to raise them in a timely filed PCRA petition.

Further, for the reasons stated above, we conclude that Counsel has complied with the technical requirements of **Anders** and **Santiago**, including informing Appellant of his right to proceed *pro se* or with privately retained counsel. **See Goodwin**, 928 A.2d at 290.

Appellant also asserts that his conviction for persons not to possess firearms violates his rights under the Second Amendment to the United States Constitution. Appellant's *Pro Se* Mot. to Vacate, 4/11/24, at 1-4 (unpaginated) (citing, *inter alia*, **New York State Rifle & Pistol Ass'n, Inc. v. Bruen**, 597 U.S. 1, 22-25 (2022)); Appellant's *Pro Se* Resp., 4/2/24.

It is well-established that "issues, even those of constitutional dimension, are waived if not raised in the trial court. A new and different theory of relief may not be successfully advanced for the first time on appeal." **Commonwealth v. Cline**, 177 A.3d 922, 927 (Pa. Super. 2017) (citations and quotation marks omitted); **see also** Pa.R.A.P. 302(a) (stating that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal"). Appellant did not raise a challenge to the constitutionality of 18 Pa.C.S. § 6105 before the trial court; therefore, his constitutional claim is waived. **See Cline**, 177 A.3d at 927; Pa.R.A.P. 302(a); **see also Kalichak**, 943 A.2d at 291 (explaining that waived issues are frivolous).

For these reasons, our independent review of the record does not reveal any additional, non-frivolous issues. **See Flowers**, 113 A.3d at 1250; **see**

***also Goodwin***, 928 A.2d at 291.  Accordingly, we grant Counsel's petition to withdraw and affirm the judgment of sentence.

Judgment of sentence affirmed.  Counsel's petition to withdraw granted. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 05/07/2024

COMMONWEALTH OF PENNSYLVANIA:  IN THE COURT OF COMMON PLEAS

:  OF BERKS COUNTY, PENNSYLVANIA

:  CRIMINAL DIVISION

VS.  :

:  No. 0302-22

:

ALEXANDER AQUINO-OQUENDO  :  DIMITRIOU GEISHAUSER, J.

Alisa R. Hobart, Esquire, Assistant District Attorney,
Attorney for the Commonwealth

Douglas J. Waltman, Esquire,
Attorney for the Appellant

**MEMORANDUM OPINION, GEISHAUSER, E.D. JUDGE,**    **August 10, 2023**

On January 11, 2023, following a jury trial, the Appellant was convicted of persons not to possess, use, manufacture, control, sell, or transfer firearms[1], as well as six summary Vehicle Code violations. On June 12, 2023, he was sentenced to serve four and one-half to ten years of incarceration in a state correctional facility. On June 21, 2023, the Appellant filed a post-sentence motion, which was denied by this court on June 22, 2023.

On July 13, 2023, the Appellant filed a notice of appeal to the Superior Court of Pennsylvania. On July 17, 2023, this court ordered the Appellant to file a Concise Statement of Errors Complained of on Appeal. The Appellant complied with this court's order on July 26, 2023. In his appeal, the Appellant alleges the following errors, which are set forth verbatim:

---

[1] 18 Pa.C.S.A. § 6105(a)(1)

BERKS COUNTY, PA

2023 AUG 10 PM 4:03

CLERK OF COURTS



1

1. The evidence was insufficient to establish the elements of Persons Not to Possess a Firearm 18 Pa.C.S.A. § 6105(a)(1) beyond a reasonable doubt.

   a. Specifically, there was insufficient evidence provided at trial to establish that Defendant possessed the firearm beyond a reasonable doubt.

2. The verdict was against the weight of the evidence for the charge of Persons Not to Possess a Firearm, 18 Pa.C.S.A. § 6105(a)(1), as it failed to show Defendant possessed the firearm.

3. We respectfully request the right to file an amended Concise Statement of Errors Complained of on appeal upon receipt and review of the transcript.

(Concise Statement of Errors Complained of on Appeal, 7/25/23).

## SUFFICIENCY OF THE EVIDENCE

The Appellant first argues that the evidence was not sufficient to convict him of persons not to possess, use, manufacture, control, sell, or transfer firearms. Specifically, he claims that the evidence produced at trial failed to establish beyond a reasonable doubt that he possessed the firearm. Sufficiency of the evidence claims are questions of law. *Commonwealth v. Widmer*, 560 Pa. 308, 319, 744 A.2d 745, 751 (Pa. 2000). "Evidence will be deemed sufficient to support the verdict where it establishes each material element of the crime charged, and the commission thereof by the accused, beyond a reasonable doubt." *Id.*

When reviewing a sufficiency claim, an appellate court must view the evidence in the light most favorable to the verdict winner. *Id.* The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. *Commonwealth v. Lewis*, 911 A.2d 558, 563 (Pa. Super. 2006). Furthermore, "any doubts

BERKS COUNTY, PA

2023 AUG 10 PM 4:03

CLERK OF COURTS

2

regarding an appellant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Id.*

Section 6105(a)(1) of the Crimes Code provides, "A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth. In the instant case, the parties stipulated that on March 6, 2014, the Appellant entered a guilty plea to possession with the intent to deliver a controlled substance[2] and robbery[3]. (N.T. 128; Commonwealth's Exhibit 4).

At trial, Officer Vincent Garapoli of the Cumru Township Police Department testified that after midnight on December 17, 2021, he was driving on Lancaster Avenue behind a Nissan Murano that he intended to stop for traffic violations when the driver, who was subsequently identified as the Appellant, stopped the vehicle, got out, threw his hands in the air, and started yelling. (N.T. at 50-55). Officer Garapoli testified that the Appellant was the only person in the vehicle. (N.T. at 56). Officer Garapoli described the Appellant as angry and hostile. (N.T. at 56).

Officer Garapoli testified that the Appellant ignored his orders to return to the vehicle. (N.T. at 56). The Appellant closed the driver's side door, locked the car, and

---

[2] 35 P.S. § 780-113(a)(30)
[3] 18 Pa.C.S.A. § 3701(a)(1)(ii)

3

BERKS COUNTY, PA
2023 AUG 10 PM 4:03
CLERK OF COURTS

walked toward Officer Garapoli while alleging that he was being racially profiled. (N.T. at 57). Officer Garapoli informed the Appellant that he was under arrest and placed the Appellant in handcuffs following a brief struggle. (N.T. at 57-58).

Officer Garapoli then walked to the vehicle and used his flashlight to look in through the driver's side window. He observed a black semi-automatic handgun on the driver's side floorboard. (N.T. at 60-61). Further investigation revealed that the vehicle was registered to Miguel Angel Reyes Lopez. (N.T. at 62). The handgun was subsequently sent to the Pennsylvania State Police Laboratory for forensic analysis. (N.T. at 68). DNA swabs were obtained from the Appellant and the registered owner of the firearm, Andrew Morales-Garcia. (N.T. at 68; 79; Commonwealth's Exhibit 7).

Timothy Gavel, a forensic DNA scientist employed by the Pennsylvania State Police Laboratory, testified that his analysis revealed that DNA from at least four individuals was present on the firearm. (N.T. at 121). Mr. Gavel explained that the Appellant's DNA profile could be included as a potential contributor to the DNA sample obtained from the gun and that Andrew Morales-Garcia's DNA profile could be excluded as a contributor. (N.T. at 107-111). Mr. Gavel testified that it was seventy-three septillion times more likely that the DNA sample obtained from the gun originated from the Appellant and three unknown individuals as opposed to four unknown individuals. (N.T. at 108). A septillion is a number with twenty-four zeros. (N.T. at 108). Mr. Gavel further testified that out of the four individuals who contributed DNA to the sample obtained from the gun, the Appellant's contribution was the largest. (N.T. at 124).

4

The Defense called Andrew Morales-Garcia to testify. Mr. Morales-Garcia testified that the Appellant is his cousin and that on December 16, 2021, he borrowed the Appellant's car because he was having car problems. (N.T. at 134-135). Mr. Morales-Garcia stated that he picked up the Appellant's Nissan Murano, used it for approximately an hour, and then returned it. (N.T. at 135). Mr. Morales-Garcia testified that he owned the Mossberg semi-automatic pistol at issue in this case and that he placed it under the seat in the Nissan Murano when he borrowed the car. (N.T. at 136).

Mr. Morales-Garcia stated that he did not realize that he had left his gun in the Appellant's car until he heard about the Appellant's arrest the following day. (N.T. at 137). Mr. Morales-Garcia testified that he contacted the Cumru Township Police Department and provided a statement about leaving his gun in the Appellant's vehicle. (N.T. at 137-138). Mr. Morales-Garcia testified that he also attended the Appellant's first court appearance. (N.T. at 138). Sergeant Thomas Pinkasavage of the Cumru Township Police Department verified that Mr. Morales-Garcia called and spoke to him about the gun and testified that, following the conversation, he confirmed that Mr. Morales-Garcia had a permit to carry a concealed firearm. (N.T. at 148-149).

These facts, taken together, were sufficient for the jury as factfinder to find the Appellant guilty of persons not to possess, use, manufacture, control, sell, or transfer firearms. The fact that the Appellant was the largest contributor to the DNA sample retrieved from the firearm and the fact that Andrew Morales-Garcia's DNA profile could be excluded from the DNA sample was no doubt helpful to the jury in reaching

5

its decision. The Appellant's claim that the evidence produced at trial failed to establish beyond a reasonable doubt that he possessed the firearm is without merit.

## WEIGHT OF THE EVIDENCE

The Appellant also argues that the jury's verdict was against the weight of the evidence. "A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict, but contends, nevertheless, that the verdict is against the weight of the evidence." *Commonwealth v. Davis*, 799 A.2d 860, 865 (Pa. Super. 2002). A true "weight of the evidence" claim therefore alleges that the verdict is a product of speculation or conjecture. *Commonwealth v. Dougherty*, 451 Pa. Super. 248, 249, 679 A.2d 779, 785 (Pa. Super. 1996). "Such a claim requires a new trial only when the verdict is so contrary to the evidence as to shock one's sense of justice." *Id.*

It is the exclusive role of the finder of fact to determine the proper weight to assign to the evidence. The finder of fact is free to believe all, part, or none of the evidence, and is also responsible for determining the credibility of the witnesses. *Commonwealth v. McCloskey*, 835 A.2d 801, 809 (Pa. Super. 2003). "An appellate court cannot substitute its judgment for that of the finder of fact." *Id.* "Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim." *Id.* "Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is

6

manifestly unreasonable or where the law is not applied or where the record shows that the action is the result of partiality, prejudice, bias, or ill will." *Commonwealth v. Forbes*, 867 A.2d 1268, 1273 (Pa. Super. 2005). Not surprisingly, a trial court's exercise of discretion in finding that a verdict is or is not against the weight of the evidence is "one of the least assailable reasons for granting a new trial." *Id.*

Here, given the facts set forth above, the jury's verdict of guilty on the charge of persons not to possess, use, manufacture, control, sell, or transfer firearms was well reasoned and does not shock one's sense of justice. Furthermore, this court's denial of the Defendant's post-sentence motion was not manifestly unreasonable, was not the result of misapplication of the law, and was not the result of partiality, prejudice, bias, or ill will. Therefore, the Defendant's second allegation of error is also without merit.

For the aforementioned reasons, we respectfully request that the Appellant's appeal be denied.